UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| RIQUIE L. BOUTIN, | | |
| Plaintiff | | Civil Action No. |
| v. | | |
| | | COMPLAINT UNDER |
| LIFE INSURANCE COMPANY OF NORTH AMERICA, | | 29 U.S.C §1132 |
| Defendant | | |

The Plaintiff complains against the Defendant as follows:

1. The Plaintiff is a resident of Lyman, Maine.

2. The Defendant is an insurance company licensed to do business in Maine.

3. This Court has jurisdiction of this lawsuit under 29 U.S.C. §1132.

4. The Plaintiff has exhausted all legally-required administrative remedies.

## ERISA-GOVERNED LONG-TERM DISABILITY PLAN

5. The Plaintiff was insured under the Long-Term Disability Insurance Policy issued by the Defendant to the Plaintiff's employer, Navin, Haffty and Associates, LLC (hereinafter "the Policy").

6. The Plaintiff's work history is a great success story and demonstrates not only her great work ethic but her desire to work as long as possible.

7. She has a high school education and started her working career as an admitting clerk at a hospital.

8. She was promoted to administrative assistant, and then promoted again to be responsible for overseeing scheduling for the MEDITECH software system, a program for the hospital's conversion to electronic medical records and medical assessment records.

9. She taught herself software development and worked for this hospital building software platform access while working closely with a clinical analyst and with information technology personnel. Navin, Haffty and Associates then hired her away from the hospital as a Senior Consultant to train, lead, and project manage clients' teams to build platforms which incorporated the MEDITECH software to Navin, Haffty's clients all over the United States.

10. At the time she stopped working, the Plaintiff was the only consultant in the United States certified to use MIS, one of the critical software modules of the MEDITECH software.

11. As a result, the Plaintiff's expert services were in high demand by companies throughout the United States.

12. Through her hard work, self-teaching and commitment, the Plaintiff went from earning $27,597.16 in 2007, her first year as a clerk at the hospital, to earning over $140,000 in her last year at Navin, Haffty and Associates.

13. The Plaintiff's Regular Occupation required frequent reaching and handling, frequent fingering, frequent to constant sitting, and occasional standing.

14. The Plaintiff stopped working on October 18, 2014 due to chronic pain, stiffness and fatigue caused by her fibromyalgia and seronegative polyarthritis.

15. While still working, she experienced severe pain in her neck and shoulders.

16. Her hands began shaking uncontrollably and her fingers began to curl in toward her palms.

17. While still working, her pain and stiffness progressed into all of her joints, particularly her hands, wrists, upper arms and elbows, shoulders, knees, ankles and neck.

18. As a result of her symptoms, she could no longer use her hands, wrists, arms, elbows to perform the keyboard typing for sustained periods as required for her occupation.

19. The Plaintiff timely filed a long-term disability claim (the "Claim") under the Policy.

20. The Defendant denied the Claim effective September 15, 2016, and after the Plaintiff's timely appeal of that denial, denied the Plaintiff's appeal.

21. In its appeal denial letter, the Defendant asserted that The Plaintiff does not have any medically-based restrictions on her ability to perform work activity, and determined she was no longer disabled from performing her Regular Occupation, effective September 15, 2016.

## Count I

22. Unfortunately, since she stopped working, her symptoms have not improved and she continues to be unable to return to her Regular Occupation or any other occupation for which she is or may become reasonably qualified, based on her education, training, or experience.

23. The Plaintiff's rheumatologist, John Shearman, MD, has stated that the Plaintiff is restricted to "occasional" (defined by the Defendant as 0-2.5 hours per day, 0 to 1/3rd of the day): "Sitting, standing, walking, reaching (overhead, desk level, and below waist), fine manipulation (right and left), simple grasp (left and right), and firm grasp (right and left)."

24. The Plaintiff's primary care provider Beverly Wood, PA-C agrees with Dr. Shearman and believes that due to her fibromyalgia and seronegative polyarthritis, the Plaintiff is limited to sitting less than 1

hour in the course of an 8-hour workday (with normal breaks), and standing less than 2 hours in the course of an 8-hour workday (with normal breaks).

25. Physician Assistant Wood further believes that if she attempted to return to work, the Plaintiff's sicknesses and resulting symptoms would frequently interfere with her ability to maintain attention and concentration to perform work tasks; would frequently require her to need additional and unscheduled breaks during the workday for relief from her symptoms; and would frequently interfere with the Plaintiff's ability to persist at and complete normal work tasks.

26. Physician Assistant Wood further believes that if she attempted to return to work, the Plaintiff would likely miss one to two workdays per month due to her sicknesses and resulting symptoms.

27. Based on Dr. Shearman's and Physician Assistant Wood's opinions, the Plaintiff has been unable to perform the material duties of her Regular Occupation since October 18, 2014.

28. Based on Dr. Shearman's and Physician Assistant Wood's opinions, since September 15, 2016, the Plaintiff has been unable to perform the material duties of any other occupation for which she is or may become reasonably qualified, based on her education, training, or experience.

29. The Defendant hired Vladimir Liarski, MD, a rheumatologist, to review the Plaintiff's medical records and provide his opinions on whether the Plaintiff has restrictions and limitations supported by the medical records.

30. In his report dated November 28, 2017, Dr. Liarski claims that although the Plaintiff has fibromyalgia with "chronic pain and tenderness affecting multiple joints and non-joint sites", "fibromyalgia syndrome by itself is not considered to be a reason for impairment." Dr. Liaski's opinion violates well-established medical/disability principles as it is well-recognized that fibromyalgia and the resulting symptoms of that illness can absolutely be disabling under the terms of the Defendant's Policy.

31. Dr. Liarski further opines that the Plaintiff's "complaints are inherently subjective and I cannot rely solely on these to determine medical necessity of restrictions and limitations." Dr. Liarski's opinion also violates well-established medical/disability principles as it is well-recognized that fibromyalgia symptoms, despite being, of necessity, "subjective," can be disabling under the terms of the Defendant's Policy.

32. The Defendant's reliance on Dr. Liarski's opinions for its denial of the Plaintiff's Claim further violates *Cook v. Liberty Life Assurance Company of Boston*, a case involving chronic fatigue syndrome, a

condition for which, like fibromyalgia, there is no determinative diagnostic laboratory test, in which the First Circuit held: "Given the nature of Cook's disease, it was not reasonable for Liberty to expect her to provide convincing clinical evidence that she was suffering from CFS." 320 F. 3d 11, 21-22.

33. The Defendant's denial of The Plaintiff's Claim fails to appreciate the Plaintiff's severely limiting and restricting symptoms caused by her fibromyalgia and seronegative polyarthritis.

34. The Defendant's denial of the Plaintiff's Claim violates the terms of the Policy, is unsupported by the well-documented and persuasive medical and occupational evidence, and is arbitrary and capricious.

## Prayer For Relief

35. Pursuant to 29 U.S.C. §1132(a)(A)(1)(B), the Plaintiff respectfully asks this Court to enforce her rights under the terms of the ERISA-governed Policy, and enter the following judgment:

A. Reverse the Defendant's denial of the Plaintiff's Claim and award the Plaintiff her Claim benefits to which she is entitled, from September 16, 2016 to the date of the Court's Decision, with interest;

B. Direct the Defendant to continue to pay the Plaintiff her monthly LTD benefits as long as she qualifies for such benefits under the terms of the Policy; and

C. Order the Defendant to pay the Plaintiff's attorneys their reasonable attorney's fees.

Respectfully submitted:

Date: February 23, 2018

/s/ Andrew J. Bernstein
Andrew J. Bernstein, Esq.
Bar No. 002257
Attorney for the Plaintiff
Law Offices of Joe Bornstein
P.O. Box 4686
Portland, ME 04112

Case 2:18-cv-00083-GZS Document 1 Filed 02/23/18 Page 9 of 9 PageID #: 9